UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEPHEN J. BRUSSARD,<br><br>                    Plaintiff,<br><br>        v.<br><br>PRESIDENT & FELLOWS OF HARVARD<br>COLLEGE aka HARVARD UNIVERSITY,<br><br>                    Defendant. | Civil Action No. 1:20-cv-11758-WGY |

**DEFENDANT'S MEMORANDUM IN SUPPORT
OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 7.1(b), Defendant

President and Fellows of Harvard College aka Harvard University ("Harvard") submits this

Memorandum in Support of its Motion to Dismiss the Amended Complaint.

**I.
INTRODUCTION**

Plaintiff Stephen Brussard brings this Amended Complaint against Harvard seeking to

recover unspecified damages arising out of Harvard's decision to lawfully terminate its

contractual relationship with a company owned by Plaintiff, Brussard General Contractors

("BGC"). BGC was a vendor that provided facilities maintenance services to Harvard over the

course of several years, pursuant to a contract between Harvard and BGC. In September 2019,

Harvard ended its business relationship with BGC.

Plaintiff has now brought allegations against Harvard claiming that he was misclassified

by Harvard as an independent contractor in violation of the Independent Contractor Statute, that

he was terminated in retaliation for reporting purported improper behavior by certain Harvard

employees, and that Harvard has withheld payments from him in violation of the Massachusetts

Wage Act.

Plaintiff's claims must be dismissed because they fail as a matter of law.  Plaintiff has not established that he was an employee of Harvard. None of his claims apply to entities, and Plaintiff concedes (as he must) that the operative working relationship was between Harvard and BGC, the company owned and operated by him.

Further, even if he had been an employee of Harvard (which he was not), Plaintiff's misclassification, retaliatory termination, and Wage Act claims fail because Plaintiff has not sufficiently alleged facts to support those claims.

 Thus, as more fully explained below, Harvard respectfully requests that Plaintiff's Amended Complaint be dismissed in its entirety with prejudice.

## II.
## FACTUAL BACKGROUND[1]

Plaintiff owns Brussard General Contractors, with which Harvard contracted to perform certain "services in connection with the maintenance of buildings and facilities, including electrical, plumbing, carpentry, painting, flooring, roofing, and masonry services." *See* Amended Complaint ("Am. Compl.") (ECF #21) at ¶8. Harvard and BGC executed the relevant contract for services on or around July 1, 2019. *See* Exhibit 1 (Contract between Harvard and Brussard General Contractors).[2]  Under the contract, Harvard had the right to terminate it for convenience

---

[1] Harvard recites here the allegations as set forth by Plaintiff and accepts them as true only for purposes of this motion.

[2] Because the contract forms the basis of the business relationship between the parties, it is "incorporated into the complaint by reference" for purposes of this motion. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Sauer v. Belfor USA Grp., Inc.*, 205 F. Supp. 3d 209, 218 fn. 2 (D. Mass. 2016). In deciding a motion to dismiss, a court considers "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken . . ." *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir.1993). When "a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." *Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998). When such documents contradict an allegation in the complaint, the document trumps the allegation. *See Clorox Co. P.R. v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 32 (1st Cir. 2000) (citing *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d

at any time in its sole discretion.  *Id.*, ¶8.1.

Plaintiff has alleged that in May 2018, he reported to Harvard misconduct by certain Harvard employees.  *Id.* at ¶14-15. On June 7, 2018, members of Harvard's Risk Management and Audit Services ("RMAS") met with Plaintiff regarding the allegations. *Id.* at ¶17. Harvard terminated certain personnel after the RMAS investigation was complete. *Id.* at ¶18.

Over fourteen months later, on October 16, 2019, Harvard terminated its contract with BGC.  *Id.* at ¶20, Ex. 1 at ¶8.1.  Plaintiff has alleged that he was not paid for certain services performed by BGC prior to Harvard's termination of the BGC contract. *Id.* at ¶21. He has not alleged that *he* performed any of that work, the nature of those services, when that work was allegedly requested or completed, or how much he claims BGC is owed.

### III.
### ARGUMENT

### <u>Standard of Review</u>

In order to survive a motion to dismiss under Rule 12(b)(6), a complaint "must state a plausible, not a merely conceivable, case for relief."  *Sepúlveda–Villarini v. Dep't of Educ. of P.R.,* 628 F.3d 25, 29 (1st Cir. 2010).  This standard requires that the factual allegations support the "reasonable inference that the defendant is liable for the misconduct alleged." *Haley v. City of Boston,* 657 F.3d 39, 46 (1st Cir. 2011) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)) (internal quotation mark omitted).

In deciding the motion, the Court is to assume that Plaintiff's factual allegations are true and make all reasonable inferences in his favor, keeping in mind that his obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions and that a

---

449, 454 (7th Cir. 1998)). *See also Gustavsen v. Alcon Labs.*, *Inc.*, 272 F. Supp. 3d 241, 246 (D. Mass. 2017), aff'd, 903 F.3d 1 (1st Cir. 2018).

formulaic recitation of the elements of a cause of action will not suffice.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Comeau v. Town of Webster*, Mass., 881 F. Supp. 2d 177, 189 (D. Mass. 2012) (plaintiff must do more than use the "magic" language required by the statute and "parrot the standard" to prevent dismissal of claims).

## I.      PLAINTIFF'S MISCLASSIFICATION CLAIM (COUNT ONE) FAILS BECAUSE THE INDEPENDENT CONTRACTOR STATUTE DOES NOT APPLY HERE.

Plaintiff's Amended Complaint, and the operative contract underlying this action, make clear that Harvard contracted with Brussard General Contractors, not Plaintiff.  *See* Am. Compl. ¶ 8 and Exhibit 1.  Nonetheless, Plaintiff individually attempts to bring suit pursuant to the Massachusetts Independent Contractor Statute, M.G.L. c. 149 § 148B, which applies only to individuals who may have been misclassified as independent contractors, not to entities.  *See Cook v. Estes Express Lines, Corp.*, 2018 WL 1773742 (D. Mass. 2018) (Stearns, J).  As explained in *Cook*, the Attorney General and relevant case law have made clear that the statute does not apply where employees of a company (such as BGC here) are performing tasks pursuant to a contract between that company and the defendant (here, Harvard).  *See Cook*, 2018 WL 1773742 at * 1, citing *Weinberg v. Grand Circle Travel, LCC*, 891 F. Supp. 2d 228, 240 (D. Mass. 2012) ("[I]t is clear that the law applies only to *individuals* who have been misclassified as independent contractors—not companies") (emphasis in original) and Attorney General's Fair Labor Division on Mass. Gen. Laws ch. 149, § 148B, Op. Att'y Gen. Mass. 5 (2008) (noting "[t]he Law is focused on the misclassification of *individuals*") (emphasis added).

Plaintiff, as owner of Brussard General Contractors, managed the relationship between Harvard on one hand, and the employees of BGC on the other.  The Amended Complaint makes clear that Plaintiff "provided contracting services" to Harvard– in other words, he did not perform trade work, such as electrical or plumbing, himself. *See* AC ¶9.

Because Plaintiff performed services for Harvard only in his role as owner of BGC, his circumstances are analogous to those of the plaintiff in *Cook*, who attempted, like Brussard here, to bring suit in his own name.  The Court in *Cook* disallowed this sleight of hand, and dismissed the case because the Independent Contractor Statute does not apply to a "business-to-business relationship."  *Cook,* 2018 WL 1773742 at * 2.

Although *Cook* was decided at the summary judgment stage, the Court need not wait until later in this litigation to dismiss the instant Complaint. All of the information needed to reach the inevitable conclusion that Harvard and BGC were involved in a "business-to-business relationship" is available to the Court even at this stage: Brussard's Amended Complaint concedes that BGC is the operative entity, *see* Am. Compl. at ¶8; the contract between BGC and Harvard is properly before the Court, *see supra* at fn. 2 and Exhibit 1; and Brussard provided general contracting work, *see* Am. Compl. ¶9.  Nothing more is needed to properly conclude that the Independent Contractor Statute does not apply here, and the case should be dismissed with prejudice.

## II.     PLAINTIFF'S MISCLASSIFICATION CLAIM ALSO FAILS BECAUSE HE HAS NOT ALLEGED SUFFICIENT FACTS TO SUPPORT HIS CONCLUSORY CLAIMS.

Even if Plaintiff were bringing a claim based on his own work, rather than on the relationship between BGC and Harvard, the Amended Complaint fails to allege sufficient facts to support his claim that he was an employee under the Independent Contractor Statute. The statute and cases interpreting it provide that any individual providing services to another is presumed to be an employee, but that presumption is overcome if the following three indicia of an independent contractor relationship can be established:

> (1) the individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact;

5

(2) the service is performed outside the usual course of the business of the employer; and

(3) the individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed.

G.L. c. 149, § 148B.

As explained below, Plaintiff's allegations that he was an employee, rather than an independent contractor, are conclusory, and therefore insufficient to overcome a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A.   <u>Plaintiff Has Not Alleged Any Facts in Support of His Claim That He Worked Under Harvard's Control.</u>

Whether a provider of services is free from direction and control depends upon whether the "worker's activities and duties [were] actually . . . carried out with minimal instruction." *Sebago v. Bos. Cab Dispatch, Inc.*, 471 Mass. 321, 332 (2015) (citing Advisory 2008/1, Attorney General's Fair Labor and Business Division ("independent contractor completes the job using his or her own approach with little direction and dictates the hours that he or she will work on the job")). "The 'test is not so narrow as to require that a worker be entirely free from direction and control from outside forces.'" *Beck v. Massachusetts Bay Techs., Inc.*, No. CV 16-10759-MBB, 2017 WL 4898322, at *6 (D. Mass. Sept. 6, 2017) (quoting *Chaves v. King Arthur's Lounge*, No. 07-2505, 2009 WL 3188948, at *1 (Mass. Super. Ct. July 30, 2009). "Rather, '[t]he essence of the distinction under common law has always been the right to control the details of the performance . . . and the freedom from supervision 'not only as to the result to be accomplished but also as to the means and methods that are to be utilized in the performance of the work.'" *Id.* (quoting *Ruggiero v. Am. United Life Ins. Co.*, 137 F. Supp. 3d 104, 113 (D. Mass. 2015)).

Plaintiff's allegation on this point that "Plaintiff's services were, in fact, performed under the control and direction of the Defendant," *see* Am. Compl. ¶10, is plainly insufficient.

Likewise, Plaintiff's general claim that "Harvard managers issued work schedules, work orders and directions to perform specific tasks at specified locations on campus..." – which is made only in the Preliminary Statement of the Amended Complaint - is also insufficient.  *See* Am. Compl., ¶ 1  These allegations do not plausibly suggest that Plaintiff was an employee, as it does not contain any factual allegations concerning Plaintiff's role, such as who at Harvard allegedly issued him which work orders, to whom he allegedly reported at Harvard, the nature of that reporting structure, whether he had to wear a uniform in order to perform his general contracting, or otherwise in what way(s) he was acted under Harvard's control and direction. *Compare Da Costa v. Vanguard Cleaning Sys., Inc.*, No. CV 15-04743, 2017 WL 4817349, at *6 (Mass. Super. Sept. 29, 2017). Again, Mr. Brussard himself, as owner of BGC, provided services to Harvard as a *general contractor*, not a tradesperson or maintenance worker.  *See* Am. Compl. ¶ 9, Ex. 1.  Brussard conspicuously fails to allege any facts to support the allegation that he somehow performed general contracting work under the control and direction of Harvard.  *See* Ex. 1.

   B.    Plaintiff Does Not Sufficiently Allege that His Services Were Performed in the Usual Course of Harvard's Business.

In considering whether a service is performed outside the usual course of the business of the employer, courts consider "whether the service the individual is performing is necessary to the business of the employing unit or merely incidental."  *Sebago v. Bos. Cab Dispatch, Inc.*, 471 Mass. 321, 333, 335 (2015).

Plaintiff's sole allegation on this point is that his general contracting services were work "performed in the usual course of the business of Harvard's [Facilities Maintenance Organization]." Compl. at ¶11.  Again, this is a "formulaic…" conclusory and insufficient statement. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Even assuming that

the facilities department – rather than Harvard as a whole – is the correct point of comparison for this analysis, Plaintiff has utterly failed to allege any *facts* concerning the usual course of business at the facilities department, or whether those tasks are similar to the tasks performed by Plaintiff. He also plainly disregards the breadth of the usual course of business done by Harvard's Office of Physical Resources and Planning[3], which includes, but is not limited to, building operations and maintenance, custodial services, cleaning services, landscape maintenance, recycling and waste management, and events support services.[4] The services that Plaintiff performed for Harvard were as a *general contractor – i.e.*, overseeing the employees *of his own company* who provided tasks related to "the maintenance of buildings and facilities, including electrical, plumbing, carpentry, painting, flooring, roofing, and masonry services." *Id.* at ¶8. *See Matthews v. E. I. du Pont de Nemours & Co.*, No. 4:16-CV-02934-RBH, 2018 WL 5978111, at *5 (D.S.C. Nov. 13, 2018) ('[w]here repairs are specialized, major, or the type of work which the employer is not equipped to handle with its own employees, that work is not a part of the business."). It is clear that Plaintiff has failed to allege – because he cannot in good faith allege – that Plaintiff's work as a general contractor is core to the educational mission of Harvard or the work of its facilities department.

C.      Plaintiff's Claim That He Was Not Engaged In An Independently Established
        Trade Through BGC is Contradicted by Publicly Available Information.

Moreover, Plaintiff's misclassification claim fails because BGC was "customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed." G.L. c. 149, § 148B(a)(3). In assessing

---

[3] Plaintiff appears to conflate Harvard's Facilities Maintenance Organization and Harvard's Office of Physical Resources and Planning as if they are one entity; they are not.
[4] *See* Harvard's Office of Physical Resources and Planning webpage: https://oprp.fas.harvard.edu/ (last visited January 14, 2021)

whether Plaintiff was engaged in an independently established trade, the critical inquiry is whether "the [Plaintiff was] capable of performing the service to anyone wishing to avail themselves of the services or, conversely, whether the nature of the business *compels* [Plaintiff] to depend on a single employer for the continuation of the services." *Sebago v. Bos. Cab Dispatch, Inc.*, 471 Mass. 321, 336 (2015) (emphasis added). "In the case law, the line is drawn between 'the worker [who] is wearing the hat of an employee of the employing company; and one who 'is wearing the hat of his own independent enterprise.'" *Ruggiero v. Am. United Life Ins. Co.*, 137 F. Supp. 3d 104, 123-24 (D. Mass. 2015) (quoting *Boston Bicycle Couriers, Inc. v. Deputy Dir. of the Div. of Emp't & Training*, 56 Mass. App. Ct. 473, 480 (2002)).

"The essential determination is whether 'the worker is an entrepreneur and service is performed by him or her in that capacity." *Boston Bicycle Couriers. Inc.*, 56 Mass. App. Ct. at 480 (construing statute relating to unemployment compensation contributions). "[B]eing free to advertise one's services and perform work for other companies is compelling evidence a worker is a contractor regardless of whether he did so or not." *Beck*, 2017 WL 4898322, at *10. On the other hand, "[f]actors tending to show an employer-employee relationship include, but are not limited to, providing workers with all equipment, purchasing worker's compensation for the workers, paying workers an hourly wage, and being unable to work for competitors." *Id.*

Plaintiff's Amended Complaint concedes, as it must, that Brussard performed work as the general contractor and owner of BGC. AC at ¶ 8. And publicly available information demonstrates that BGC was not working "exclusively" for Harvard since 2007.[5] Am. Compl. at

---

[5] The publicly available information that disputes Plaintiff's claim in the Amended Complaint is "incorporated into the complaint by reference" for purposes of this motion. *Tellabs*, 551 U.S. at 322. At the motion to dismiss stage this Court may take notice of public documents . . . which bear on the merits of [Plaintiff's] claims. *See Watterson v. Page*, 987 F.2d 1, 3 (1st Cir.1993). When such documents contradict allegations in the complaint, the documents trump the allegations. *See Clorox Co. P.R. v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 32 (1st Cir.2000).

¶9. Rather, BGC has at all times been free to, and has indeed, performed work for other entities. For example:

- Plaintiff, through BGC, applied for a building permit to construct an addition to a home in Arlington, Massachusetts in 2011;

- Plaintiff, through BGC, applied for a building permit to remodel a home due to a fire in Peabody City, Massachusetts in 2017;

- Plaintiff, through BGC, applied for a permit to remodel a home in Newburyport, Massachusetts in 2016; and

- Plaintiff, through BGC, applied for a permit to remodel a home in Nashua, New Hampshire in 2012.

*See* Exhibit 2.

For all of these reasons, Harvard respectfully requests that Count One be dismissed.

## III.   PLAINTIFF DOES NOT HAVE A COGNIZABLE RETALIATORY TERMINATION CLAIM (COUNT TWO).

Plaintiff's initial Complaint in this case improperly asserted a claim under Massachusetts General Law, c. 149, § 185, alleging that he was terminated in violation of a Massachusetts whistleblower statute applicable only to public entities.  In light of Harvard's motion to dismiss that claim, Plaintiff filed his Amended Complaint, dropping that cause of action and attempting to recast the same claim as a retaliatory termination claim brought under common law. Specifically, Plaintiff's retaliatory termination claim attempts to invoke an exception to the at-will employment doctrine in Massachusetts, which prohibits termination of employment when that termination is contrary to a well-defined public policy.  This attempt to re-assert a failed claim cannot proceed for at least two reasons, as explained herein.

First, Plaintiff cannot invoke this exception because, as explained above, Plaintiff has not sufficiently alleged that he was a Harvard employee. Harvard incorporates its arguments in Section I herein by reference, and on that basis alone, Plaintiff's retaliation claim fails.

Second, even assuming, *arguendo*, that Plaintiff were an employee, his claim of wrongful termination in violation of public policy fails.

If Plaintiff were considered an at-will employee of Harvard, Harvard would have been free to terminate his employment for any reason. *Wright v. Shriners Hosp. for Crippled Children*, 412 Mass. 469, 472 (1992). The Supreme Judicial Court in Massachusetts has recognized a narrow exception to the employment at-will doctrine when employment is terminated contrary to a well-defined public policy. *Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch.*, 404 Mass. 145, 149 (1989). The existence of a "well-defined public policy" is a question of law for the court. *Id*. "Redress is available for [at-will] employees who are terminated for asserting a legally guaranteed right (e.g., filing workers' compensation claim), for doing what the law requires (e.g., serving on a jury), or for refusing to do that which the law forbids (e.g., committing perjury). *See id*. at 149-150. The Supreme Judicial Court "consistently has interpreted the public policy exception narrowly, reasoning that to do otherwise 'would convert the general rule... into a rule that requires just cause to terminate an at-will employee.'" *King v. Driscoll*, 418 Mass. 576, 582 (1994).

Plaintiff's scant allegations, even accepted as true for purposes of this motion, do not meet the standard for wrongful termination in violation of public policy. Plaintiff's allegation that he "blew the whistle" by internally reporting incidents of "illegal and unethical acts" to his supervisor and his recounting of Harvard's investigation process, *see* Am. Compl. at ¶¶14-20, do not suffice, because doing so was not a "legally guaranteed right" nor was he "doing what the law requires" or "refusing to do that which the law forbids.". *Wright v. Shriners Hosp. for Crippled Children*, 412 Mass. at 472–73. Although Plaintiff claims that he reported "illegal" activities to Harvard, he does not allege that he was required by law to do so; nor does he allege

that the misconduct that he internally reported constituted a violation of criminal law. *Compare Flesner v. Technical Communications Corp.*, 410 Mass. 805, 811 (1991) (redress available to at-will employee discharged in retaliation for his cooperation with law enforcement investigation concerning employer).

Moreover, Plaintiff's Amended Complaint is devoid of any allegation that his report to Harvard concerning the alleged wrongdoing of other employees played a substantial or motivating part in Harvard's decision to terminate the contract with BGC. Plaintiff does not allege any retaliatory actions by Harvard in the fourteen months between his report and Harvard's decision to terminate BGC's contract.[6] "Where adverse employment actions *follow close on the heels* of protected activity, a causal relationship may be inferred [but] as the elapsed time between those two events becomes greater, the inference weakens and eventually collapses[.]" *Krause v. UPS Supply Chain Sols., Inc.*, No. CIV.A.08-CV-10237, 2009 WL 3578601, at *11 (D. Mass. Oct. 28, 2009) (emphasis in original). In that case, "the plaintiff must rely on additional evidence beyond temporal proximity to establish causation." *Id.*, citing to *Mole v. Univ. of Mass.*, 442 Mass. 582 (Mass.2004) (declining to find temporal proximity where the protected activity and adverse employment action were "one to two years," "more than two years," or "many years removed") (emphasis added). The "inference of causation is attenuated after a gap of *two months* such that '[c]hronological proximity does not by itself establish causality, particularly if [t]he larger picture undercuts any claim of causation.'" *Vaks v. LumiraDx, Inc.*, No. CV 18-12571-LTS, 2020 WL 7324756, at *11 (D. Mass. Dec. 11, 2020) (internal quotations omitted) (emphasis added).  Here, a gap of fourteen months – with nothing

---

[6] To the contrary, he alleges that he has "been asked to perform work at Harvard *since being terminated.*" Am. Compl. at ¶ 3 (emphasis added).

more alleged in terms of causation – is clearly insufficient to raise a claim of retaliation above the speculative level.  *See id.*[7]

In short, Plaintiff has not established that he engaged in protected activity and that his participation in that activity played a substantial or motivating part in Harvard's allegedly retaliatory action.  Accordingly, Harvard respectfully requests that Count Two be dismissed.

## IV.    PLAINTIFF HAS NOT SUFFICIENTLY PLED A CLAIM PURSUANT TO THE MASSACHUSETTS WAGE ACT (COUNT THREE).

Plaintiff's claim alleging a violation of M.G.L. c. 149, §148 (the "Wage Act") must be dismissed as well.  *First*, only "individuals who provide services to an employer as an employee (rather than as an independent contractor) fall within the protection of the wage act[.]" *Somers*, *supra* at 589.  For all of the reasons set forth above, Plaintiff has not alleged sufficient facts in support of his claim to be a Harvard employee.  Accordingly, the Wage Act does not govern the work at issue in this case.

*Second*, Plaintiff's Wage Act claim is precisely the type of "[t]hreadbare recita[l] of the elements of a cause of action," supported only by his conclusory statements, that are insufficient to defeat a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor are Plaintiff's

---

[7] *See also Abril-Rivera v. Johnson*, 2015 WL 4578404, at *9 (1st Cir. July 30, 2015) (temporal proximity must be "very close"); *Ahern v. Shinseki*, 629 F.3d 49, 58 (1st Cir. 2010) (a gap of six months may be insufficient); *Mesnick v. General Elec. Co.*, 950 F.2d 816, 828 (1st Cir.1991) (nine month gap between alleged protected conduct and adverse employment action considered too long); *Sardigal v. St. Louis Stockyards Co.*, No. 8–5248, 1986 WL 32650, at *5 (S.D.111.Oct. 28, 1986) (three months too long to permit an inference of discriminatory retaliation); *Pena v. Honeywell Int'l, Inc.*, 923 F.3d 18, 32 (1st Cir. 2019) (gap of four months between alleged protected conduct and adverse employment action cannot establish causality); *Brandt v. Fitzpatrick*, 957 F.3d 67, 82 (1st Cir. 2020) (nine month gap between alleged protected conduct and adverse employment action could not establish but-for causation on its own); *Eldred v. Consol. Freightways Corp. of Delaware*, 898 F. Supp. 928, 940 (D. Mass. 1995) (where 18 months elapsed between alleged protected conduct and adverse employment action, the causal connection disappeared in the lapse in time).

conclusory allegations regarding what he is allegedly owed from Harvard bolstered by "sufficient facts" which make "those conclusions plausible." *Robinson v. Spencer Stuart, Inc.*, No. CIV.A. 13-10278-RWZ, 2013 WL 3989672, at *7 (D. Mass. Aug. 5, 2013).

Plaintiff has alleged that "Harvard has not paid [him] for certain services performed prior to his termination." Am. Compl. at ¶21. Plaintiff fails to allege any facts to support this claim, including whether *he* performed the work at issue.  Nor does he allege what type of services are at issue, when they were performed, or that any wages had been earned and were due and payable.  Indeed, Plaintiff's Amended Complaint does not even include an estimate of the wages he is allegedly owed. *Desy v. AZZ, Inc.*, No. CV 19-40135-TSH, 2020 WL 3065317, at *2 (D. Mass. June 9, 2020) (plaintiff's estimate of company's revenue and an explanation of the reasons a company might shift earnings was not sufficient for Wage Act claim).  *Compare Tan v. GrubHub, Inc.*, 171 F. Supp. 3d 998, 1006 (N.D. Cal. 2016) (plaintiff sufficiently specified expenses that defendant failed to reimburse, i.e., vehicles, gas, parking, and phone data). *See also Peñalbert–Rosa v. Fortuño–Burset*, 631 F.3d 592, 595 (1st Cir.2011) ("[S]ome allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory and the factual.") (internal quotation marks omitted).

In sum, Plaintiff has not sufficiently pled a Wage Act claim and Count Three therefore should be dismissed.

## CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed in its entirety, with prejudice.

14

Dated:  January 19, 2021                              Respectfully submitted,

                                                      /s/ Victoria L. Steinberg_____
                                                      Victoria L. Steinberg (BBO #666482)
                                                      Saraa Basaria (BBO #685705)
                                                      TODD & WELD LLP
                                                      One Federal Street
                                                      Boston, MA  02110
                                                      Telephone:     (617) 624-4714
                                                      Facsimile:     (617) 624-4814
                                                      vsteinberg@toddweld.com
                                                      sbasaria@toddweld.com

                                                      *Attorneys for Defendant President and*
                                                      *Fellows of Harvard College*


                         **CERTIFICATE OF SERVICE**

        I hereby certify that this document has been filed through the ECF system and will be
sent electronically to the registered participants as identified on the Notice of Electronic Filing
(NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

Date:  January 19, 2021

                                              /s/ Victoria L. Steinberg_____
                                              Victoria L. Steinberg

15